# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

**STANLEY BOYD GREEN,**                    **CASE NO.  16-02105-5-SWH**
                                          **CHAPTER 13**

       **DEBTOR.**

## MOTION TO DISMISS CASE FOR NON-COMPLIANCE WITH SECTION 109(e)

COMES NOW, Jennifer Joyner Cleland ("Movant"), by and through her undersigned counsel, and moves to dismiss the Debtor's chapter 13 case because the Debtor's unsecured claims exceed the debt limits set by 11 U.S.C. § 109(e) such that the Debtor is not qualified to be a chapter 13 debtor.  In support of this Motion, the Movant shows as follows:

1.     On April 20, 2016, (the "Petition Date"), the Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code.

2.     The sole motivation for the Debtor's chapter 13 filing was to stay enforcement of and discharge his obligations to the Movant as set forth in an Equitable Distribution and Judgment entered on February 22, 2016, in Forsyth County District Court Case No. 13 CVD 4122 (the "ED Order"), a true and correct copy of which is attached hereto as **Exhibit A**, under which the Debtor was required to pay a total of $318,287.50 to Movant on March 23, 2016, as her share of a $1.909 million legal fee that was paid to the Debtor in March 2015 for his work on a legal matter that began before the parties separated.  The Debtor was also ordered to pay $154,076.57 to Movant on April 15, 2016, as a Distributive Award.  The Debtor made a payment

of $116,000 under the ED Order on March 22, 2016, leaving $356,364.07 due to Movant when the Debtor filed chapter 13.[1]

3.      On March 2, 2016, the Forsyth County District Court entered an Alimony Judgment and Order (the "Alimony Order"), a true and correct copy of which is attached hereto as **Exhibit B**.  The Debtor paid all amounts due on alimony prior to filing chapter 13, and he has remained current on his required payments of $6,000 per month in alimony.  Much of this sum is used to pay a mortgage loan to Wells Fargo Bank, N.A. and to maintain the home which was deeded to Movant under the ED Order.

4.      On March 23, 2016, the Debtor filed a pro se notice of appeal from the ED Order and the Alimony Order.

5.      Movant filed a Motion to Dismiss Appeal in Forsyth County District Court based upon the Debtor's failure to timely serve the proposed record on appeal.

6.      On August 5, 2016, after the deadline to serve the proposed record on appeal, the Debtor filed a Motion for Extension of Time to Serve Proposed Record on Appeal ("Extension Motion").  The Motion to Dismiss and Extension Motion have not been heard, and may not be heard until this Court rules upon the Debtor's motion to retain special counsel to assist in the appeal.

7.      The Debtor lists three general unsecured creditors in "Schedule E/F: Creditors Who Have Unsecured Claims:" American Express - $11,018; Barclay Card - $22,739.23; and Movant, shown as holding an "unliquidated" claim of $356,076.57 for a total of $389,834.16. Dkt. 9.  Movant actually is owed $356,364.07 as reflected in a proof of claim she filed with the

_____

[1] Cleland also received a portion of the Debtor's retirement accounts at Womble Carlyle Sandridge & Rice, LLP and Strauch Green & Mistretta, P.C., and the Debtor paid $40,000 to Bell Davis & Pitt for Movant's attorney's fees in the state court divorce proceeding.

Court.  American Express filed a timely claim for $11,018, but Barclay Card did not file a claim before the bar date.

8.     The Debtor also lists several secured creditors in "Schedule D: Creditors Who Have Claims Secured by Property," that he identifies as "undersecured" by the vehicles securing their debt in the following amounts:  Bank of America - $5,508.89; PNC Bank - $1,666.01; and US Bank - $383.12.

9.     As admitted by the Debtor under penalty of perjury, in his own Schedules, the total amount of unsecured debt owed by the Debtor was $397,391.82.  Considering the correct amount owed the Movant, the unsecured debt totals $397,679.32.

10.     On September 9, 2016, the Debtor's 341 Meeting was concluded, having been continued from the first setting on May 23, 2016.  At the recent 341 Meeting, the correct amounts due to Movant and paid to Movant under the ED Order were confirmed by the Debtor; Debtor confirmed that Movant is actually owed $356,364.07.  The Debtor also confirmed how he arrived at the value of the vehicles securing Bank of America, PNC Bank, and US Bank and that the value of the vehicles was less than the amount due these lenders on the Petition Date.

11.     Section 109(e) sets forth who is eligible to be a chapter 13 debtor:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

Under 11 U.S.C. § 104(b), the Section 109(e) debt limits are adjusted every three years to reflect changes in the cost of living.  As of April 1, 2016, the debt limit for unsecured claims is $394,725.

12.     The precise language of Section 109(e), when compared with other Code provisions such as Section 303(b)(1),[2] has led courts to conclude that the terms "contingent" and "unliquidated" differ from the term "disputed."  Thus, disputed claims are considered when determining eligibility for chapter 13 relief, while unliquidated and contingent claims are not. *See, e.g., Matter of Knight,* 55 F.3d 231, 234-35 (7th Cir. 1995); *In re Sylvester*, 19 B.R. 671 (B.A.P. 9th Cir. 1982); *Gould v. Gregg, Hart, Farris & Rutledge*, 137 B.R. 761 (W.D. Ark. 1992); *In re Lamar*, 111 B.R. 327 (D. Nev. 1990).  As stated in *Myers v. South Med Supply Co.*, 2004 Bankr. LEXIS 2402 (ED Pa. 2004), "[A] state court judgment entered prepetition against a debtor will render the claim noncontingent and liquidated, even if on appeal.  The appeal only renders the claim 'disputed.'"  *See also In re Albano; In re Cluett*, 90 B.R. 505 (Bankr. M.D. Fla. 1988); *In re Martinez*, 51 B.R. 944 (Bankr. D. Colo. 1985).

13.     Regarding consideration of the undersecured creditors scheduled by the Debtor, a majority of bankruptcy courts utilize 11 U.S.C.S. § 506(a) to bifurcate claims listed as secured on the petition date into secured and unsecured portions for determining Section 109(e) eligibility.  The unsecured portion of undersecured debt is counted when determining Section 109(e) eligibility. *See In re Rios*, 476 B.R. 685, 686 (Bankr. D. Mass. 2012); *see also In re Scovis,* 249 F.3d 975, 982, 983 (9th Cir. 2001) (holding that debts are defined as "secured" or "unsecured" for Chapter 13 eligibility purposes by applying the standard set out in 11 U.S.C. § 506(a)); *In Santos v. Dockery (In re Santos), 540 Fed. Appx. 622, 623 (9th Cir. Cal. 2013)*

---

[2] Pursuant to 11 U.S.C. 303(b):

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

(holding that, when undersecured creditors are categorized as unsecured under § 506(a), the amount is considered in determining the debt limit under chapter 13, and dismissing debtor's case for exceeding the debt limit).

14.     Because an individual's debts are calculated as of the petition date, the majority of courts have held that a Bankruptcy Court should not look beyond a debtor's schedules in determining the debtor's eligibility for Chapter 13 relief unless the court determines that the debtor did not file its schedules in good faith. *In re De La Hoz*, 45 B.R. 192 (Bankr. S.D. Fla 2011). *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975, 982 (9th Cir. 2001); *In re Lybrook*, 951 F.2d 136, 138-39 (7th Cir. 1991); *Comprehensive Accounting Corp. v. Pearson (In re Pearson)*, 773 F.2d 751, 756-58 (6th Cir. 1985); *In re Redburn*, 193 B.R. 249, 254-56 (Bankr. W.D. Mich. 1996); *In re Rigdon*, 94 B.R. 602, 604 (Bankr. W.D. Mo. 1988); *In re Robertson*, 84 B.R. at 112; *In re Koehler*, 62 B.R. 70, 72 (Bankr. D. Neb. 1986).  In *In re Grew*, the Court determined that the debtor was ineligible for Chapter 13 relief because her schedules reflected noncontingent and liquidated unsecured debts exceeding the applicable Section 109(e) limit, even though creditors filed proofs of claim well below that limit. 278 B.R. 619, 620-22 (Bankr. M.D. Fla. 2002).

15.     Based upon the Schedules filed by the Debtor and the true nature of the Movant's claim as a disputed rather than an unliquidated claim, the Debtor is clearly ineligible to be a chapter 13 debtor and his case should be dismissed.

16.     The Movant also has strong arguments for dismissal of the case for bad faith of the Debtor.  However, dismissal for bad faith is very fact intensive and must be considered under the "totality of the circumstances" as determined by the Fourth Circuit Court of Appeals.  In the event this Court does not dismiss the Debtor's case under this Motion, the Movant reserves her

right to and intends to seek dismissal for bad faith and to object to confirmation of the currently filed plan or any amended plan.

WHEREFORE, Movant Jennifer Joyner Cleland respectfully requests that the Court dismiss the Debtor's case for failure to satisfy the debt limits under 11 U.S.C. § 109(e) and such other relief as the Court deems appropriate.

Dated: September 15, 2016

**NELSON MULLINS RILEY & SCARBROUGH LLP**

/s/ Terri L. Gardner
Terri L. Gardner, State Bar No. 9809
Leslie Lane Mize, State Bar No. 32790
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone: (919) 329-3800
Telecopy: (919) 329-3799
Email: terri.gardner@nelsonmullins.com
Email: leslie.mize@nelsonmullins.com

*Counsel for Jennifer Joyner Cleland*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

STANLEY BOYD GREEN,            **CASE NO.  16-02105-5-SWH**
                                      **CHAPTER 13**

    DEBTOR.

## NOTICE OF MOTION TO DISMISS CASE FOR NON-COMPLIANCE WITH SECTION 109(e)

NOTICE is hereby given of the Motion to Dismiss Case for Non-Compliance with Section 109(e), filed by Jennifer Joyner Cleland in the above-referenced case, by and through undersigned counsel.  This notice is hereby given and served as of the date indicated below.

<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the Motion, or if you want the court to consider your views on the matter, then on or before **October 11, 2016 (21 days)**, unless otherwise ordered, you or your attorney must file with the court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position and a request for hearing.

Pursuant to that Memorandum from Chief Bankruptcy Judge J. Rich Leonard, EDNC, dated February 24, 2005, attorneys practicing in the United States Bankruptcy Court for the Eastern District of North Carolina, including attorneys admitted pro hac vice, are required to file electronically all documents [including new bankruptcy petitions, motions, memoranda of law, and other pleadings, but excluding proofs of claim and documents to be placed under seal in accordance with Local Bankruptcy Rule 5005-4(6)]. Any documents required to be filed electronically pursuant to Local Bankruptcy Rule 5005-4(1) but presented in paper form on or after April 1, 2005, shall be accompanied by an application for an exemption from this rule and a proposed order granting the relief sought. The application shall state the reason(s) why electronic filing would impose an extreme hardship on the attorney.  Local Bankruptcy Rules pertaining to electronic filling, including Local Bankruptcy Rules 5005-4(1) and 5005-4(2) may be found on the Court's website www.nceb.uscourts.gov. Electronic filing may be done through the Court's web site. The Court's mailing address is:

Clerk, U.S. Bankruptcy Court
Eastern District of North Carolina
PO Box 791
Raleigh, NC 27602

    If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  You must also mail a copy to the parties listed in the certificate of service served herewith, including:

| | |
|---|---|
| Marjorie K. Lynch, Esquire | Terri L. Gardner |
| Bankruptcy Administrator | Nelson Mullins Riley & Scarborough LLP |
| 434 Fayetteville Street, Suite 640 | 4140 Parklake Avenue, Suite 200 |
| Raleigh, NC 27601 | Raleigh, NC 27612 |

    If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the motion at a date, time and place to be later set and all parties will be notified accordingly.

    If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

    Dated: September 15, 2016

**NELSON MULLINS RILEY & SCARBROUGH LLP**

/s/ Terri L. Gardner
Terri L. Gardner, State Bar No. 9809
Leslie Lane Mize, State Bar No. 32790
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone: (919) 329-3800
Telecopy: (919) 329-3799
Email: terri.gardner@nelsonmullins.com
Email: leslie.mize@nelsonmullins.com

*Counsel for Jennifer Joyner Cleland*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:

**STANLEY BOYD GREEN,**                     **CASE NO.  16-02105-5-SWH**
                                            **CHAPTER 13**

**DEBTOR.**

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that the foregoing **MOTION TO DISMISS CASE FOR NON-COMPLIANCE WITH SECTION 109(e)** has been filed electronically in accordance with the Local Rules and was therefore served electronically on those entities that have properly registered for such electronic service and/or by depositing a copy thereof in the United States mail, postage prepaid, addressed to the parties below:

John F. Logan                               William E. Brewer, Jr.
Office of the Chapter 13 Trustee            The Brewer Law Firm
PO Box 61039                                311 E. Edenton Street
Raleigh, NC 27661-1039                      Raleigh, NC 27601

Stanley Boyd Green
913 Thompson Glenn Place
Wake Forest, NC 27587

        Dated: September 15, 2016

                                  /s/ Terri L. Gardner
                                  Terri L. Gardner

**EXHIBIT A**

NORTH CAROLINA       )     IN THE GENERAL COURT OF JUSTICE

                      F I L E D      DISTRICT COURT DIVISION

FORSYTH COUNTY       )           13 CVD 4122

                2016 FEB 22   P 2: 47

JENNIFER CLELAND GREEN,       )

      Plaintiff,     FORSYTH COUNTY C.S.C.       )

               BY_____ )      EQUITABLE

V.                     )    DISTRIBUTION JUDGMENT AND ORDER

                             )

STANLEY BOYD GREEN,          )

                             )

      Defendant.             )

---

THIS CAUSE came on for hearing before the undersigned Retired Recalled District Court Judge presiding at the JANUARY 19 – 29, 2016 civil, non-jury sessions of the District Court of Forsyth County upon the parties' claims for equitable distribution. Plaintiff was present in Court and represented by her attorney, Robin J. Stinson. Defendant was present in Court and represented by his attorney, Michael F. Schilawski. Based upon the testimony of the parties and the experts, documentary evidence, demeanor of the witnesses, the pleadings, and the stipulations as set forth in the Final Pretrial Order and during trial, and other documents of record and by a preponderance of the evidence, the Court enters this judgment and order with the following:

## FINDINGS OF FACT

1.     The Plaintiff is a citizen and resident of Forsyth County, North Carolina and the Defendant is a citizen and resident of Wake County, North Carolina.

2.     The Defendant was duly served with a copy of the complaint and the notice of this hearing as required by law.

3.     The Court has jurisdiction over the parties and the subject matter and this case is properly before the Court.

4.     Plaintiff and Defendant were married on October 22, 1994, and separated on June 25, 2013. The parties were divorced September 8, 2014.

5.     Four children were born of the marriage of the parties; to wit: Stanley Cleland Green, born August 28, 1995; Jack Lassiter Green born October 12, 1997; David Sarber Green, born February 20, 2000; and Alexander McDevitt Green, born October 3, 2002.

6.     The parties hereto covenant that each has made a complete disclosure to the other of all real, personal, tangible, and intangible property that he or she owns solely, jointly, severally, or in which he or she may have a beneficial interest. Any subsequently discovered non-disclosed marital asset will be divided between the parties, with the non-disclosing party receiving 40 percent and the other party receiving 60 percent of the actual non-disclosed marital asset or 60 percent of its value.

ATTEST A TRUE COPY. Witness my hand and Official Seal This 22 day of February, 2016

Deputy/Assistant Clerk Superior Court Forsyth County, N.C.

1

7.    A Final Pretrial Order was signed by the Honorable Lillian Jordan prior to the beginning of trial on January 19, 2016.

8.    During the marriage and before the date of separation the parties acquired the tangible and intangible personal property listed on Exhibit A which is marital property and is attached hereto and incorporated herein by reference. The parties stipulated to the values and the distribution of the property listed on Exhibit A of the January 19, 2016 Equitable Distribution Pretrial Order. The total value of the property on Exhibit A to be distributed to the Plaintiff is $251,049.11. The total value of the property on Exhibit A to be distributed to the Defendant is $220,666.09.

9.    During the marriage the Defendant contributed to SF&G Employees Retirement Plan that is listed on Exhibit A (d) at number 11 of the Equitable Distribution Pretrial Order entered herein, and by stipulation of the parties it shall be divided equally between the parties. The marital portion of this plan has divisible property (passive increases/decreases) that has accrued since the date of separation. The divisible property shall also be divided equally between the parties with the amount to be determined by the Plan Administrator. Plaintiff's attorney shall draft a separate QDRO to this end.

10.    During the marriage the Defendant contributed to a Womble Carlyle Savings & Self-Employed Retirement Plan. After he left the employment of Womble Carlyle, the Defendant rolled this account over into an IRA. The value of this account on the date of separation as stipulated to by the parties is $226,543.00 that is listed on Exhibit A attached hereto. No funds have been deposited into this account since the date of separation, however the Defendant has withdrawn funds from the IRA. The Court is not making a finding as to whether this withdrawal from the IRA was in violation of an Injunction in this case.

11.    The parties stipulated that each shall receive one-half of this IRA balance on the date of separation plus or minus passive gains or losses on that one-half since the date of separation to be determined by an IRA Fiduciary, if necessary. The Plaintiff's attorney shall draft any documents necessary in addition to this Judgment and Order.

12.    The Plaintiff, by stipulation, shall receive the passive gain on her T. Rowe Price IRA since the date of separation and that amount is $14,928.59.

13.    During the marriage and at the time of the parties' separation, the parties owned one parcel of real property that the parties stipulated is marital property. The property is deeded in the names of the Plaintiff and the Defendant.

14.    This property is located at 2733 Spring Garden Road, Winston-Salem, NC, and was the marital residence. The parties disagreed upon the value and the distribution of said property.

15.    Three real estate appraisers testified as to the value of this marital residence. One of the biggest differences in adjusting the comparable sales for the additions and/or deficiencies between the marital residence and them is the cost per square foot when the comparable sale was larger or smaller than the marital residence. The Plaintiff's appraiser, Mr. Clapp, used $15.00 per square foot. The Defendant's appraiser, Mr. Stainback, used $30.00 per square foot. The third appraiser, Mr. Slaughter, was hired just after the separation of the parties to perform a date of separation appraisal. He used $50.00 per square foot. The residence is 60 years old. All the

2

comparable sales were 48 to 65 years old.  They averaged $120.00 per square foot according to
the sales price.

16.    The Court finds that $50.00 per square foot used by Mr. Slaughter is a more
reasonable figure to use to adjust for the difference in the size of the comparable sales compared
to the marital residence.  The Court further finds that substituting $50.00 per square foot for Mr.
Clapp's $15.00 per square foot in each of the comparable sales along with the other figures he used
to make adjustments and then averaging the comparable sales is the basis of the Court's finding as
to the value of the marital residence on the date of separation and the present value.  The Court
finds that the value on the date of separation, June 25, 2013, was $410,316.00 and the present value
is $414,983.00.

17.    The marital residence shall be distributed to the Plaintiff.  Even though Defendant
has remarried since the parties' divorce, pursuant to N.G. Gen. Stat. Section 50-20(c1), a second
or subsequent spouse acquires no interest in the marital and divisible property of his or her spouse
from a former marriage until a final determination is made in the marital property of the spouse's
former marriage.  By virtue of this final determination, Defendant is divested of his ownership in,
and Plaintiff is vested as the sole owner of, the marital residence.

18.    The Divisible Property value of the marital home is based upon passive
appreciation caused by the real estate market being stable or even improving since the date of
separation and is a positive $4,667.00 and it shall be distributed to the Plaintiff.

19.    As of the date of separation, the balance on the mortgage on the marital residence
located at 2733 Spring Garden Road, Winston Salem was $368,448.74.  Therefore the Plaintiff is
distributed a net value of $41,867.26 as of the date of the separation.  The Plaintiff has made all
the mortgage payments since the date of separation.  The reduction in the mortgage in the sum of
$18,364.94 is active appreciation and is not divisible property and is the separate property of the
Plaintiff.

20.    Defendant is a licensed attorney in Winston Salem and Raleigh, NC.  He attended
law school after the parties hereto were married.  He clerked for Judge Joe John on the NC Court
of Appeals for one year before being hired by Womble Carlyle.  In 2009 he joined the law firm of
Strauch Fitzgerald & Green P.C. (hereinafter The Firm) as a founding partner.  The other two
members of the firm had practiced with the Defendant at Womble Carlyle.  The Firm is a
corporation that distributes all profits as income to the owners in order to avoid paying corporate
taxes.

21.    The Plaintiff offered Roger V. Edwards, CPA, ABV, CFF as an expert in business
valuations and the Defendant offered Betsy Fonvielle, CPA, CFF, CBA as an expert in business
valuations.  The Court accepted both as expert business valuators.

22.    The reports and opinions of Ms. Fonvielle and Mr. Edwards are very difficult to
compare.  Not only did they use different methods, but some of the actual numbers and information
used were different.  Even though they had the same information from The Firm, for example, they
each used different figures for the actual salary of the Defendant when adjusting the salary.  They
also used different national medians to adjust the actual salaries although they were using some of
the same national sources.  Bottom line, Mr. Edwards, Plaintiff's expert, found the Defendant's
interest in The Firm to be $428,400.00 on the date of separation and $415,700.00 on the date of
trial.  Ms. Fonvielle, Defendant's expert, valued the Defendant's interest at the same times to be

3

$301,000.00 on the date of separation before an adjustment to $305,500.00 for an error she made. Her current value is $409,000.00. Ms. Fonvielle used only the Capitalized Returns value of $305,500.00 for the date of separation value even though she calculated the Net Asset Value and the Direct Market Data Method. For the current value she calculated it using these same three methods, however, she averaged the Capitalized Returns and the Direct Market Data Method. If she had not, the current value would have been $458,000.00 using only the Capitalized Returns Method.

23.    The Court finds that Ms. Fonvielle's reports are marginally better than Mr. Edward's with the adjustments the Court will make. Ms. Fonvielle has considerably more experience in valuing businesses and professional practices.

24.    After considering the three methods used – Net Asset Value for a value of $172,042 (before discounts and exclusive of any amount for goodwill), Capitalized Returns for $301,000 or $305,500.00 and Direct Market Data for $291,700.00, Ms. Fonvielle's opinion favored the Capitalized Returns Method for the date of separation value. Her opinion of the Defendant's interest in The Firm on the date of separation is $301,000 in spite of her error.

25.    Ms. Fonvielle used essentially the same methods described above to find a present day value of The Firm. She also used data from The Firm and data from nationally recognized sources. For the Net Asset Value she found a value of $150,074.00 before discounts and exclusive of any amount for goodwill. For the Capitalized Returns value she found $458,000.00 to be the value without adding any revenue from the Cruise Case. For the Direct Market Data value she found it to be $360,000.00. It is her opinion that for the present value of Defendant's interest in The Firm the Capitalized Returns and the Direct Market Data should be averaged to produce the best value. This average is $409,000.00 and the Court finds this to be the date of trial value, noting that Ms. Fonvielle used 26.32% for Defendant's interest that was his date of separation interest that is now 40% to 50%. The Court finds that her use of the date of separation percent of ownership is appropriate since the Defendant did not receive 40% to 50% during the marriage and his responsibilities increased after the departure of one of the owners.

26.    The Court recalculated the date of separation value of The Firm using the Direct Market Data Method used by Ms. Fonvielle but using the same Price/Gross Multiple that she used when she valued the current value. She used .65 for the current value and .59 in the date of separation value. This changed her date of separation Direct Market Data value to $323,453.00 from $291,700.00. The Court then averaged the Direct Market Data value with the Capitalized Returns value of $305,500.00 as Ms. Fonvielle did for the current value to get a date of separation value of $314,476.00. The Court finds that the date of separation value of Defendant's interest in The Firm is $314,476.00.

27.    The difference between the date of separation value and the current value of the Defendant's interest in the firm is a positive $94,524.00. All of this increase is passive and is divisible property and shall be distributed to the Defendant. Any active increase in value of his interest in The Firm after the date of separation is the difference between the 26.32% and 40% to 50% of the current total value of The Firm. Ms. Fonvielle used the same per cent the Defendant was receiving before the date of separation to calculate her after the date of separation value and not the new 40% to 50% interest the Defendant began receiving shortly after the date of separation to the present. The Defendant did not rebut the passive nature of the $94,524.00 increase in value of The Firm after the date of separation that occurred by the work of third parties and his continuing

4

to work as he did during the marriage. The $94,524.00 is divisible property and it shall be distributed to the Defendant.

28.      Both experts who valued The Firm testified that the Goodwill of The Firm is an intangible asset and that the value of the Goodwill is a part of the value as calculated using the Capitalization Returns Method that Ms. Fonvielle used or the Excess Earnings Method Mr. Edwards used. The Court finds that the value of the Goodwill of The Firm is an amount within the values found by Ms. Fonvielle in placing a value on future earnings.

29.      The Defendant's law firm of Strauch Fitzgerald & Green, P.C., and now Strauch Green & Mistretta, P.C, brought with it in 2009 a case from Womble Carlyle entitled Cruise Connections Charter Management Inc. v. Royal Canadian Mounted Police, Et Al (hereinafter called the Cruise Case). This case took years to complete with appeals and finally a mediated settlement.

30.      The Firm won the case and The Firm received a fee of $5,492,500.00.   The Defendant's share of this fee was $1,909,277.90. Prior to a division of the fee between the shareholders of The Firm, the firm was reimbursed advanced costs of $146,075.20, other employees were given bonuses totaling $475,157.93, and Womble Carlyle was paid $200,000.00. Mr. Fitzgerald, a former owner of The Firm, was paid 8% of the balance after the foregoing items were paid.  The balance, except for around $150,000.00 which had been saved to pay Womble Carlyle, if needed, was divided between Mr. Strauch and the Defendant according to their bylaws.

31.      The law firm had 6,608 total hours in the Cruise Case.  5,159 of these hours were on the books before the date of separation of the parties, June 25, 2013. The Firm is primarily a civil litigation firm providing legal services mostly to businesses.  The cases include toxic tort, contract law, product liability, personal injury, aviation, trucking and environmental cases.  The Firm lawyers work by the hour and do not at this time have any contingency cases and have no plans to have any.  The Cruise Case was an exceptional case.  Because it was exceptional and the fee it generated was unusual compared to the other fees generated on the hourly rate cases, the appraisers of The Firm did not consider the fee as it did the other fees of the firm as set out below. Therefore, the Court finds that a portion of the Cruise Case fee received by the Defendant after the date of separation is divisible property separate from the value of The Firm and is considered by the Court as deferred compensation for work performed during the marriage.  This fee was $1,909,277.00. The parties stipulated that the federal and state taxes to be paid on said fee may be at least $916,433.00.  The net of the fee is $992,844.00.

32.      For her date of separation value, Ms. Fonvielle calculated the hourly rate for the prior closed contingency cases to be a rate of $146.50 per hour. She used this to value the work in progress on the date of separation for the Cruise Case.  The figure she then used for WIP in her Net Asset Valuation (NAV) calculations was $891,257.00 and that included $755,867.00 for the Cruise Case.  Her valuation based on Balance Sheets is $653,655.00 for The Firm and therefore $172,042.00 for the Defendant's interest before discounts.

33.      The Court finds that 78% of the work spent by The Firm on the Cruise Case was before the date of separation.  The deferred compensation (after taxes) the Defendant received after the date of separation for the work done before the date of separation was $774,418.00.00. Ms. Fonvielle used a total of $523,723.00 of the expected Cruise Case fee on her normalized income statements to determine the date of separation value of The Firm using the capitalized returns methodology. 26.32% of this amount is $137,844.00 and it shall also be deducted from

the fee the Defendant received so as not to double dip and count this twice. Therefore, the divisible property portion of the Cruise Case fee is $636,575.00 and this fee shall be divided equally between the parties with the Plaintiff being distributed $318,287.50 and the Defendant being distributed $318,287.50.

34.     The parties stipulated in the Pretrial Order that the debts listed in this paragraph are marital debts and the Court so holds. The balance of the mortgage on the marital residence to Wells Fargo Mortgage had a balance of $368,448.74 on the date of separation. This debt is distributed to the Plaintiff. The Defendant has a student loan debt with a balance of $21,605.55 on the date of separation and it is distributed to the Defendant. The Plaintiff paid $450.00 toward this debt since the date of separation and she shall receive credit for this payment. The parties owed the Orthodontist $7,337.00 on the date of separation and it has been paid in full by the Plaintiff. She shall receive credit for this payment. The parties owed Chuck Jones $84,000.00 on the date of separation and the Defendant has paid this in full and he shall receive credit for said payment. The parties owed Kemper Auto Insurance $953.12 for insurance on the Defendant's two vehicles and the Plaintiff paid this bill. She shall receive credit for this payment.

35.     Both parties presented evidence on some of the factors in NCGS 50-(c) for an unequal division.

36.     The Plaintiff graduated from law school in 1992 and clerked for Judge Joe John on the NC Court of Appeals for 2 to 3 years. She had not practiced law since that clerkship, except for a few weeks. The parties had four sons beginning during the first year of their marriage while the Defendant attended law school in Vermont. The Plaintiff has not worked outside of the home since the few weeks mentioned above and in 2000 she and the Defendant agreed for her to allow her law license to become inactive. The Defendant is a practicing lawyer with yearly income of approximately $300,000.00 per year.

37.     The Plaintiff is 50 years old and the Defendant is 45 years old and both are in good health. They were married 18 years 8 months at the time of the separation.

38.     Both parties have incurred debts since the date of separation. Currently the Plaintiff owes her father over $82,000.00 for living expenses and over $184,668.77 for attorney fees. He borrowed these sums from his retirement account. The Defendant did not pay any spousal support the first year the parties were separated. He paid $2200.00 per month from July 2014 through June 2015, then $3,316.00 per month from July 2015 until September, 2015 and then per consent order he paid $5000.00 per month beginning in October 2015 until the present. She also owes $355,768.80 balance on her mortgage per this Judgment and Order and she has a car loan balance of $29,625.00.

39.     The Defendant's debts he has incurred since the date of separation are of a more extravagant nature than the Plaintiff's. In addition to attorney fees in the amount of $202,526.00, he has purchased a vehicle that has a balance of $58,900.00, bought a boat with a loan balance of $50,655.00 after paying $10,000.00 down, and has a car loan for the car he purchased for the nanny of the children of his now wife that has a balance of $19,738.80. In addition, the Defendant has credit card balances of $21,000.00 and a student loan balance of $21,136.46. One of the credit cards is in the name of his now wife and several thousand dollars on his credit card paid for his honeymoon at the Ritz in San Francisco. Although they are not debts, the defendant has recently paid $34,500.00 for ½ interest in a boat slip and has joined a country club. Both parties owe their lawyers for the six days of trial of this matter and the alimony portion of the trial.

6

40.    Since the date of separation the Defendant has continued to contribute several thousand dollars per month to his retirement plan which since the separation is his separate property and the Plaintiff has not had the funds to contribute to her IRA, however, her employer (her father) has contributed $1,062.06 to an employer provided retirement plan for her.

41.    In addition to the marital and divisible assets distributed in this Judgment and Order, the Plaintiff has AT&T/VGTMA stock worth $19,412.55, Comcast /VGTMSA stock worth $1,069.43, Sun Trust Stock worth $15,799.55, T. Rowe Price IRA worth $47,974.38, about $7000.00 in First Citizens accounts and $992.72 in the SECU for a total of approximately $92,000.00.

42.    In addition to the marital and divisible assets distributed in this Judgment and Order, the Defendant has separate assets including a house with his new wife in which he invested $40,000.00, Boat slip for which he paid $34,500.00 for a ½ interest, SECU checking and MM which he owns with his new wife in the amount of $85,038.97, a boat worth $60,000.00 with $10,000.00 equity, approximately 27 guns (rifles, handguns and shotguns) value not in evidence, 100 knives, stamps, 3 antique pocket watches, coins, and a separate retirement plan worth more than $107,000.00. These separate assets of the Defendant are valued at more than $276,500.00. In addition he has a whole life insurance policy with a face value of $1,275,000.00 with annual payments of $32,504.00. He also has an investment portfolio with Northwestern Mutual with a balance of $1,275,268.80 some of which is divisible property as described in paragraph 33 above.

43.    The Defendant helped to establish a very profitable law practice during the marriage after attending law school during the marriage. The Plaintiff was a full time homemaker during the marriage raising the parties' four sons. The Plaintiff took care of the home and the children to give the Defendant all the time he needed to build his law practice that included his traveling some. The Defendant in his testimony praised the Plaintiff as an outstanding mother.

44.    To recap the values of the marital property to be distributed to the parties to determine if a distributive award is necessary to achieve equity between the parties, the Court finds that the Plaintiff shall be distributed marital property and divisible property which totals a net of $622,059.34 after being credited with the marital debts distributed to her in this Judgment and Order. The property that has been distributed to her in this Judgment and Order includes $41,867.26 for the net equity in the marital residence as of the date of separation, $4,667.00 of divisible property in the marital residence, $14,928.59 which is the passive appreciation of her T. Rowe IRA, $318,287.50 which is one-half of the marital portion of the Cruise Case fee Defendant received, and $251,049.11 for the items from Exhibit A of the Equitable Distribution Pretrial Order, together with the debts assigned to her pursuant to Exhibit I of the Equitable Distribution Pretrial Order.

45.    The Defendant shall be distributed marital property and divisible property which totals a net of $842,348.04 after being credited with the marital debts distributed to him in this Judgment and Order. The property that has been distributed to him in this Judgment and Order includes $318,287.50 which is one-half of the marital portion of the Cruise Case fee he received, $314,476.00 for his interest in The Firm, $94,524.00 the divisible property of The Firm, and $220,666.00 for the items from Exhibit A.

46.    The presumption of a distribution in kind of the marital and divisible property as far as is practical was not rebutted, however due to the nature of some of the marital property it is impractical to order a complete in-kind distribution, and the distributive award granted herein to

7

the Plaintiff facilitates the distribution and is necessary to achieve equity between the parties. The Defendant has the means to pay the distributive award.

47.     In considering the evidence in the above paragraphs and the stipulation of the parties, the Court finds that an equal distribution of the marital and divisible property is not equitable in this case. The Plaintiff shall be distributed 53 % of the total net estate that totals $1,464,407.38 and the Defendant shall be distributed 47%. 53 % is $ 776,135.91. The distributive award the Defendant shall pay to the Plaintiff is $ 154,076.57.

Based upon the forgoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction over the parties hereto and the subject matter of this cause.

2.     The marital and divisible property of the parties is as set forth in the Findings of Fact above. The values of the marital and divisible property of the parties, both assets and liabilities, are as set forth in the Findings of Fact above.

3.     The separate property of the parties is as set forth in Finding of Fact numbers as set forth above.

4.     The parties are entitled to an equitable distribution of marital property.

5.     An equal division of the net marital and divisible property is not equitable. The division of the marital and divisible property set forth in the decretal paragraphs below is an equitable distribution of the marital and divisible property. This division is fair to both parties based on all of the evidence presented and the stipulations of the parties both before and during trial.

6.     A distribution in-kind as far as is practical was not rebutted, however due to the nature of some of the marital property it is impractical to order a complete in-kind distribution, and the distributive award granted herein to the Plaintiff facilitates the distribution and is necessary to achieve equity between the parties. The Defendant has the means to pay the distributive award.

7.     Such of the Findings of Fact above as are more properly denominated Conclusions of Law are incorporated herein by reference as if set forth in full.

Based upon the foregoing Findings of Fact and Conclusions of Law,

## IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.     Each party shall have as his/her sole and separate property the household furnishings and other tangible personal property now in his/her possession except as listed on Exhibit A attached hereto which the party in possession shall give to the other party to whom the property has been distributed within 30 days from the filing of this Judgment and Order.

2.     Each party is hereby awarded sole ownership of the assets listed in his or her respective column on Exhibit A attached hereto. Plaintiff shall have ownership of all assets listed in her column and said items shall be her sole and separate property, free of all claims of Defendant. Defendant shall have ownership of all assets listed in his column and said items shall be his sole and separate property, free of all claims of Plaintiff.

8

3.     The marital residence located at 2733 Spring Garden Road in Winston Salem, NC shall be distributed to the Plaintiff.  Defendant is hereby divested of his ownership interest in, and Plaintiff is hereby vested as the sole owner of, the house and lot located at 2733 Spring Garden Road, Winston-Salem, Forsyth County, North Carolina and more particularly described as follows:

> BEING KNOWN AND DESIGNATED as Lot no. 11 of Spring Garden Development, as recorded I Plat Book 16, Page 132, Forsyth County Registry, North Carolina, reference to which is hereby made for a more particular description.

> BEING INFORMALLY known as Tax Lot 011, Block 2495, Forsyth County Tax Records.

4.     Defendant shall execute a special warranty deed transferring all of his right, title and interest in the property located at 2733 Spring Garden Road, Winston Salem, NC to Plaintiff. Plaintiff's attorney shall prepare and deliver to Defendant's attorney said deed conveying Defendant's interest in said property to Plaintiff and Defendant shall execute said deed within fifteen (15) days of receiving the deed from Plaintiff's attorney. The divisible property value of $4,667.00 is also distributed to the Plaintiff.  The Plaintiff shall assume and pay in full according to the terms of the present mortgage at Wells Fargo Mortgage that is a lien on said residence until such time as she sells the residence or refinances it.

5.     The passive increase in value of the Plaintiff's T. Rowe Price IRA is $14,928.59 and shall be distributed to the Plaintiff.

6.     $318,287.50 of the marital portion of the Cruise Case fee received by the Defendant that is in the possession of the Defendant shall be distributed to the Plaintiff.  The Defendant shall pay this sum by certified check to the Plaintiff within 30 days from the filing of this Judgment and Order.

7.     The Defendant's interest in The Firm shall be distributed to him and this includes the value on the date of separation and the passive increase until date of trial.

8.     One-half of the Defendant's Womble Carlyle Savings & Self-Employed Retirement Plan balance on the date of separation shall be distributed to the Plaintiff including any passive gains or passive losses since the date of separation.  The Plaintiff's attorney shall draft any necessary documents to effectuate this.

9.     The Plaintiff shall receive one-half of the Defendant's Employee's Retirement Plan with The Firm of the date of separation value plus passive gains or passive losses to the date of trial as determined by the Plan Administrator.  The Plaintiff's attorney shall draft a QDRO to effectuate this transfer to the Plaintiff.

10.     The other $318,287.50 of the marital portion of the Cruise Case fee received by the Defendant shall be retained by the Defendant.

11.     The Plaintiff shall be distributed 53% of the total net marital and divisible property and this totals $776,665.93.

12.     The Defendant shall pay to the Plaintiff the sum of $154,076.57 on or before April 15, 2016 as a distributive award.

13.     At the request of the other party, each party shall execute and deliver any and all written instruments or documents reasonably necessary or desirable to effectuate the purposes and provisions of this Judgment and Order.

14.     Except as expressly provided otherwise in this Judgment, each party shall be solely responsible for all debts and liabilities incurred by that party following the date of separation including all charges on any account.

15.     The terms of this Judgment and Order are enforceable through the contempt powers of this Court.  Each party has the ability to seek enforcement of this Judgment at his or her respective election.

16.     This Judgment and Order resolves all claims related to the parties' respective claims for equitable distribution of marital and divisible property and debts.

This  19th  day of February, 2016.

_Lillian B. Jordan_
Judge Presiding (13 CVD 4122)

10

Exhibit A

## SCHEDULE A
## MARITAL PROPERTY AS TO WHICH THERE IS AGREEMENT
## AS TO VALUE & DISTRIBUTION

| | DESCRIPTION AND CURRENT POSSESSION OF ITEM | VALUE TO W | VALUE TO H |
|---|---|---|---|
| 1 | 2003 Honda Odyssey Van (Parties Donated Van after date of separation) | $1.00 | $1.00 |
| 2 | Joint SECU Shares x7908 (H) and (W) | $28,000.00 | $2,000.00 |
| 3 | Marital portion of Plaintiff's T. Rowe Price IRA (W) | $30,968.69 | |
| 4 | ACS/BNY Mellon (W) HSA account used to pay children's medical expenses post DOS | $920.37 | $920.37 |
| 5 | Tangible Household Furnishings, Jewelry and Personal Effects and Other Tangible Personal Property Received by Husband and Wife, already divided (H) and (W) | $1.00 | $1.00 |
| 6 | Husband and Wife's respective Northwestern Term Life Policies (H) and (W) | $0.00 | $0.00 |
| 7 | 1997 Ford Truck (H) | | $4,000.00 |
| 8 | 2007 Lexus (H) | | $13,979.00 |
| 9 | Allegacy Federal Credit Union (H) | | $1,573.76 |
| 10 | Loan repayment by Dawn Mistretta (H) | | $3,000.00 |
| 11 | Husband's SF&G Employees Retirement Plan | $77,886.55 | $77,886.56 |
| 12 | Husband's Womble Carlyle Savings & Self-Employed Retirement Plan (H) | $113,271.50 | $113,271.50 |
| 13 | Joint SECU Checking (H) | | $2,114.34 |
| 14 | Husband's SECU, x8325 | | $1,918.56 |
| | TOTAL | $251,049.11 | $220,666.09 |

5

NORTH CAROLINA      )      IN THE GENERAL COURT OF JUSTICE

                              )               DISTRICT COURT DIVISION

FORSYTH COUNTY      )            __13__ CVD __4122__

JENNIFER CLELAND GREEN,   )

               **Plaintiff**   )

vs.                         )        **CERTIFICATE OF SERVICE**

                              )

STANLEY BOYD GREEN,       )

               **Defendant.**   )

I certify that a copy of the foregoing or attached Equitable Distribution Judgment and Order was received and served as follows:

**Date and Time Served:**     Signed order received from Judge Lillian Jordon, 2/22/2016
                                      By US Mail Service and served to party on 2/22/2016

**Person Served:**            Michael F. Schilawski, Attorney at Law

**Manner of Service:**             [ ]     Personal Service by delivering to the above-named individual a copy of the aforesaid Order.

                                  [X]     First Class Mail addressed to the party and/or the party's attorney at the last known address contained in the above-captioned court file.

**The Above-Named Individual Was Not Served for the Following Reason:**

_____

_____

_____

**Date Received:**   Signed order received by U.S.Mail Service from Judge Lillian Jordan on
                        Monday, February 22, 2016.

**Date of Service:**   Monday, February 22, 2016   by U.S. Mail Service

**Signature of Person Making Service:** _____

**Name:**                           JULIA B. FRYE
                                Trial Court Coordinator
                                Forsyth County District Court

ATTEST: A TRUE COPY. Witness my hand and Official Seal
This __22__ day of _February_ , _2016_
_____
Deputy/Assistant Clerk Superior Court Forsyth County, N.C.

NORTH CAROLINA    )     IN THE GENERAL COURT OF JUSTICE
                       )        DISTRICT COURT DIVISION
FORSYTH COUNTY    )       13   CVD   4122

JENNIFER CLELAND GREEN,  )
            Plaintiff  )
vs.                  )    CERTIFICATE OF SERVICE
                     )
STANLEY BOYD GREEN,   )
          Defendant.  )

I certify that a copy of the foregoing or attached Equitable Distribution Judgment and Order was received and served as follows:

**Date and Time Served:**  Signed order received from Judge Lillian Jordon, 2/22/2016
    By US Mail Service and served to party on 2/22/2016

**Person Served:**  Robin Stinson, Attorney at Law

**Manner of Service:**      [ ]    Personal Service by delivering to the above-named individual a copy of the aforesaid Order.

                [X]    First Class Mail addressed to the party and/or the party's attorney at the last known address contained in the above-captioned court file.

**The Above-Named Individual Was Not Served for the Following Reason:**

_____

_____

_____

**Date Received:**  Signed order received by U.S.Mail Service from Judge Lillian Jordan on Monday, February 22, 2016.

**Date of Service:**  Monday, February 22, 2016_ by U.S. Mail Service

**Signature of Person Making Service:**   _Julia B. Frye, TCC_

**Name:**                JULIA B. FRYE
                      Trial Court Coordinator
                      Forsyth County District Court

ATTEST: A TRUE COPY. Witness my hand and Official Seal This _22_ day of _February_ _2016_
_____
Deputy/Assistant Clerk Superior Court Forsyth County, N.C.

**EXHIBIT B**

EXHIBIT B

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
13 CVD 4122

FORSYTH COUNTY, C.S.C.
BY _____

JENNIFER CLELAND GREEN,
    PLAINTIFF,

VS.

STANLEY BOYD GREEN,
    DEFENDANT

ALIMONY
JUDGMENT
AND ORDER

THIS CAUSE came on for hearing before the undersigned Retired Recalled District Court Judge presiding at the January 19-21, 26-28, 2016 civil, non-jury session of the District Court of Forsyth County upon the Plaintiff's claim for alimony. Plaintiff was present in Court and represented by her attorney, Robin J. Stinson. Defendant was present in Court and represented by his attorney, Michael F. Schilawski. Based upon the testimony, documentary evidence, the demeanor of the witnesses, the pleadings, and other documents of record and by a preponderance of the evidence, the Court enters this judgment and order with the following:

## FINDINGS OF FACT

1.      The Plaintiff is a citizen and resident of Forsyth County, North Carolina and the defendant is a citizen and resident of Wake County, North Carolina and both have been residents of the state of North Carolina for at least six months next preceding the institution of this action.
2.      Plaintiff and Defendant were married on October 22, 1994 and separated on June 25, 2013. The parties were divorced September 8, 2014.
3.      Four children were born of the marriage of the parties: to wit: Stanley Cleland Green, born August 28, 1995 (a junior in college); Jack Lassiter Green (a senior in high school), born October 12, 1997; David Sarber Green, born February 20, 2000 (a sophomore in high school); and Alexander McDevitt Green, born October 3, 2002 (a 7th grader in middle school).
4.  Pursuant to the terms of the January 19, 2016 Consent Order for Permanent Child Custody and Permanent Child Support, the parties share joint legal custody of the minor children. Plaintiff has primary physical custody of the minor children. The children spend time with Defendant every other weekend during the school year and every other week during the summer plus dinner at other times. The children share the holidays with the parties. The Defendant pays monthly child support of $3,184.00.

He also provides health and dental insurance for the children and pays 75% of the uninsured healthcare expenses.

5.  All parties are properly before the Court and the Court has jurisdiction of the parties and the subject matter of this action.

6.  The Plaintiff brought this action by filing a complaint seeking, among other things, alimony. Plaintiff alleged that she was and is a dependent spouse as defined by NCGS 50-16.1A(2) and that the Defendant was and is a supporting spouse as defined by NCGS 50-16.1A(5). The Plaintiff further alleged the Defendant has committed marital fault. The Defendant was properly served with the complaint and notice of this trial as required by law. He filed an answer denying the Plaintiff's allegations.

7.  The Court has considered the financial needs of the parties, the accustomed standard of living of the parties prior to their separation, the present employment income and other recurring earnings of each party from any source, the income earning abilities of the parties, the separate and marital debt service obligations of the parties, those expenses reasonably necessary to support each of the parties, and each party's legal obligation to support any other person.

8.  The Plaintiff graduated from law school in 1992 and clerked for Judge Joe John at the NC Court of Appeals for 2 to 3 years. She has not practiced law since except for a few weeks writing subrogation letters early in the parties' marriage. The Plaintiff has not worked outside of the home since the birth her first son in August of 1995 except for these referenced few weeks. In 2000 she and the Defendant agreed for her to allow her law license to become inactive. She has spent the last 20 years caring for the 4 sons of the parties.

9.  Defendant is a licensed attorney and works in Winston Salem and Raleigh, NC. He attended law school after the parties were married. He clerked for Judge Joe John at the NC Court of Appeals for one year before being hired by Womble Carlyle in Winston Salem in September 1999. In 2009 he joined the law firm of Strauch Fitzgerald & Green P.C. as a founding partner. The other two members of the firm had practiced with the Defendant at Womble Carlyle. The Firm is a corporation that distributes all profits as income to the owners in order to avoid paying corporate taxes.

10.  The Plaintiff is 50 years old and the Defendant is 45 years old and both are in good health. They were married 18 years 8 months at the time of the separation.

11. The Plaintiff filed and presented to the Court a financial affidavit, which was received in evidence. On the affidavit she listed her personal financial expenses as $8789.26. The Court has adjusted and disallowed some of these expenses based upon more current evidence. She has a new car so the court adjusted her car maintenance monthly amount to $75.00. Even though the marital residence distributed to the Plaintiff is old, $860.94 per month for maintenance is a lot so this figure has been adjusted to $500.00 per month. This reduces her percentage of the total shared family expenses from $4,219.78 to $3901.65.

12. To Plaintiff's Financial Affidavit, the Court made the following adjustments to the section identified as Individual Monthly Expenses: The Plaintiff's health insurance is now $985.00 per month instead of the $712.94 listed on the affidavit. The amount on the affidavit for clothing includes clothing for the children so that amount is adjusted downward to $200.00 per month. The uninsured medical and dental and prescription drugs items also include the children and those figures are reduced to a total of $75.00 per month. The monthly amount for gifts of $665.60 is too extravagant. That would be almost $8000.00 per year. A more reasonable amount considering there are four children is $4800.00 per year or $400.00 per month. With these changes her individual expenses are $4123.67.

13. Except for the debts owed to her family, the Plaintiff's monthly debts are included in the expenses above except for TJ Maxx and that is included in the clothing allowance. The Plaintiff's reasonable and necessary monthly needs, after the adjustments and disallowances above are $8025.00 rounded and this includes taxes of $664.42 for estimated taxes she will incur on alimony.

14. The Court has considered the evidence presented by the parties regarding the tax consequences to the Plaintiff of receiving alimony. Based upon the evidence regarding the tax consequences of alimony the Court adds $286.00 more per month for taxes Plaintiff will incur in receiving taxable alimony, making the Plaintiff's reasonable and necessary monthly needs $8311.00.

15. The Plaintiff's reasonable monthly needs for the three children are $3795.00 after deducting for the orthodontist who has been paid in full and reducing vacations by $50.00 per month per child. The child support paid by the Defendant is $3184.00 per month per the previously referenced court order.

16. The Defendant filed and presented to the Court a financial affidavit, which was received in evidence. The affidavit listed regular recurring monthly expenses totaling $9,081.62 and individual monthly expenses of $10,885.77 and expenses for the children of $3123.24 for total monthly expenses of $23,090.63.

17. The Defendant listed on his affidavit the total paid for the monthly bills for the home he owns with his new wife where he lives with her and her two children. He testified that she is a lawyer in his law firm and earned $350,000.00 in 2015.

18. The Court disallowed, as unreasonable and unnecessary, 60% of the household expenses enjoyed by his wife and her two daughters. This includes $1360.80 for the mortgage payment on the house purchased by Defendant subsequent to the date of separation with a one half net value of $108,951.54, $171.60 for house maintenance and repair; $128.10 for electricity, $69.00 for Gas/Heating Oil, $97.99 for telephone, $73.48 for water, $74.40 for cable, $36.82 for internet service, $180.00 for house cleaning service, and $48.45 for pest control. In addition the court is reducing the food at home by $1478.20 to $400.00 since the Defendant also

listed that he spends $2000.00 per month for food away from home. The court is reducing the category "Other" to $800.00 per month from $1878.20. His rent in Winston Salem for a place to use part time is now $500.00 per month and not the $850.00 listed. Also he included dues to social clubs and he did not belong to these during the marriage. The Court finds that the Defendant's regular recurring monthly expenses for himself total $4241.00 rounded.

19.  In addition, the Court disallowed from the listing in his Affidavit of individual monthly expenses, as unreasonable and unnecessary the $2759.30 listed for other insurance premiums for life insurance upon which the Plaintiff and the children are not designated beneficiaries, $1000.00 of the $2000.00 listed for food away from home, and $3000.00 of the $5029.63 listed for retirement and investment. The Defendant's reasonable individual needs, after these disallowances, are $5097.00 rounded.

20. The Court finds that the Defendant's average monthly reasonable and necessary expenses total  $9338.00.

21.  The Defendant has listed as debts a vehicle loan of $58,900.32 for a vehicle he purchased before this trial and subsequent to the parties' separation. His monthly payment of $1100.00 is included in his recurring monthly expenses above.  His listed student loan is also already included in the individual monthly expenses above.  He lists a loan payment for a boat he purchased 2 to 3 months before this trial with a balance of $50,655.00 after a $10,000.00 down payment on the boat for a monthly payment of $327.07. At about the same time he purchased a ½ interest in a boat slip at the beach for $34,500.00 cash.  He also listed a car payment for a car for his new wife's nanny for her two daughters in the amount of $368.68 per month. He also lists 2 credit card payments, one of which is for a credit card in his new wife's name alone.  The monthly payment on the credit card in his name is $260.00 and has a balance of $12,036.04.  The court finds that the Defendant has high monthly debts that are extravagant and unnecessary and are voluntary in nature.

22. The defendant has listed on his affidavit expenses for his four sons in addition to the child support of $3184.00 he pays each month.  The Court finds that he has already been given credit for his health and dental insurance premiums and that other expenses he listed are either voluntary in nature or extravagant.  The Court finds that $1800.00 per month is a reasonable amount for these expenses.

23. The Plaintiff is employed part time and has gross monthly income of $1868.92 per month and net income of $1505.98.

24.  The Defendant is one of two owners of his law firm and his gross monthly income in 2014 averaged $24,333.00.  In 2015 his monthly income averaged $42,458.00 (excluding a contingency fee payment he received in the Spring of 2015.) His affidavit lists his average gross monthly income as $23,280.00.  Using the averages on his end of year income statements for 2014 and 2015 for mandatory deductions, the Court finds that his average

gross monthly income for 2014 and 2015 was $33,395.00. His average monthly mandatory deductions were $14,012.00 and his net wages were $19,383.00.

25. The Defendant has an investment account at Northwestern Mutual that had an investment total as of December 16, 2015 of $1,275,268.80. The parties stipulated that $916,433.00 is owed in federal and state taxes on the very large contingency fee the Defendant received after the date of separation which the Court ruled was part divisible property in the Equitable Distribution case.

26. The Defendant is a supporting spouse. He is the person the Plaintiff is actually substantially dependent upon for her maintenance and support. He is the person from whom the Plaintiff is substantially in need of maintenance and support. He is 45 years old and is in good health. The Defendant and the Plaintiff testified that during the marriage the Defendant paid for all the living expenses for the family, including all expenses for health and dental and life insurance for both parties, paid all utilities each month on the marital residence, paid for cable TV, and the internet, paid for all the maintenance on the home and paid for the landscaping expenses or did it himself, provided the Plaintiff with a car to drive, paid for the food, paid for vacations and entertainment, and paid the property taxes and home owners insurance, paid for all of the other household and personal expenses of the Plaintiff and the four children. The Court so finds. The Court finds that the Defendant estimated that the household expenses averaged around $10,000.00 per month prior to the separation which does not take into consideration Plaintiff's post-date of separation expenses of having to purchase a substitute vehicle to drive and to obtain her own health insurance following the divorce, and that income taxes she must pay on any alimony she receives.

27. The Plaintiff is a dependent spouse, in that she is and has been actually substantially dependent upon Defendant for her maintenance and support throughout the parties' marriage and through the present time, and she is substantially in need of support and maintenance from the Defendant. She is 50 years old and is in good health, but has not worked outside the home in at least 19 years until she took a part time job after the parties separated.

28. During the marriage, the parties enjoyed a comfortable standard of living, living in a 60 plus year old house large enough to accommodate their children; they enjoyed nice vacations and were able to afford Plaintiff not working during the marriage and being a stay at home wife. Plaintiff made substantial contributions to the family as a homemaker and mother. Because Plaintiff was a fulltime homemaker and mother for 20 years and is now age 50, her earning power has been negatively impacted.

29. Following trial, the Court entered an Equitable Distribution Judgment and Order ("ED Judgment and Order") herein on February 22, 2016. The terms of said ED Judgment and Order, and the Findings of Fact contained therein, are incorporated herein by reference.

30. Plaintiff has been distributed marital property and divisible property in the ED Judgment and Order which totals a net of $622,059.34 after being credited with the marital debts distributed to her. She also was granted a distributive award of $154,076.57 for a total of $776,135.91 that is 53% of the marital estate. The property that was distributed to her in the Equitable Distribution case includes $41,867.00 for the net equity in the marital residence, $4,667.00 for the divisible property in the marital residence, $14,928.59 which is the passive appreciation of her T Rowe IRA, $318,287.50 which is one half of the marital portion of the Cruise Case fee Defendant received, and $251,049.00 for the items from Exhibit A attached to the Equitable Distribution Judgment.

31. In addition to the marital and divisible assets distributed in the ED Judgment, the Plaintiff owns the following separate property: AT&T/VGTMA stock worth $19,412.55, Comcast /VGTMSA stock worth 1,069.43, Sun Trust Stock worth $15,799.55, T. Rowe Price IRA worth $47,974.38, about $7000.00 in First Citizens accounts and $992.72 in the SECU for a total of approximately $92,000.00 in separate property.

32. The Plaintiff was distributed 53% of the total net estate of $1,464,407.38 and the Defendant was distributed 47%. The Plaintiff's 53% share was $776,135.91 and Defendant's share was $688,271.47. With the distributive award she is to receive from the Defendant of $154,076.57 plus the cash of $318,287.50 he has to pay to her from the deferred compensation he received after the date of separation and not counting any retirement accounts, the Plaintiff should have at least $150,000.00 to $200,000.00 to invest after she pays her debts and attorney fees. In addition she has some separate investments. Her investment income should be around $600.00 per month.

33. The Plaintiff owes her father at least $266,668.00 that he borrowed from his retirement account that she has to repay. In addition, she has attorney fees incurred during the six days of trial.

34. In order to meet her monthly reasonable and necessary living expenses, after applying her own earnings, Plaintiff need alimony from Defendant in the amount of $6000.00 per month.

35. The Court finds that an appropriate gross amount for the Defendant to pay the Plaintiff as alimony is the sum of $6000.00 per month. This sum is reasonable and necessary to provide the Plaintiff with the funds needed to meet her reasonable needs according to her accustomed standard of living. Defendant has the means and ability to pay alimony of $6,000.00 per month to Plaintiff.

36. Defendant offered evidence showing, if he earns $330,146.00 annually (as opposed to $400,000.00 annually) if he pays $5300.00 in taxable alimony per month, and he pays $3184.00 per month in child support, he will have $9,304.00 per month to meet his own living expenses.

37. Since this was a marriage of about 20 years, and considering that the Plaintiff is now 50 years old with no real career history and that she will still have two minor children still at home, it is reasonable and appropriate that alimony continue until the death of either party or the Plaintiff's remarriage or cohabitation as set forth in NCGS 50-16.9, whichever should first occur.

38. Subsequent to filing his Answer herein, Defendant admitted and stipulated that he committed acts of illicit sexual behavior during the marriage and prior to the date of separation. Since Plaintiff is a dependent spouse and Defendant is a supporting spouse, Plaintiff is entitled to an award of alimony pursuant to the terms of N.C.G.S. 50-16.3A(a).

39. Based upon the factors set forth in N.C.G.S. 50-16.3A and the Court's discretion, the award of alimony as ordered herein is equitable under the circumstances of this case.

40. The Defendant has the ability to pay the support ordered herein.

41. Based upon and after giving due consideration to the evidence presented by the parties on the various factors set forth in N.C.G.S. 16-.3A(b), the Court concludes that the resources of the Plaintiff are not adequate to meet her reasonable needs and that she is entitled to the award of alimony set forth herein.

42. From the date of the parties' separation in June 2013 through June 2014, Defendant paid Plaintiff no spousal support other than providing her with health and dental insurance, which he did until the date of the Judgment of Absolute Divorce. From July 2014 through June 2015, Defendant paid Plaintiff voluntary spousal support of $2,200.00 per month. From July 2015, Defendant paid Plaintiff voluntary spousal support of $3216 per month. On September 18, 2015, an Order for Prospective Post Separation Support was entered herein which provided, in relevant part, that Defendant would pay Plaintiff post separation support of $5000.00 per month commencing October 1, 2015. Since the date of separation and through January 2016 (a total of 32 months), the Defendant has paid to the Plaintiff in cash the total sum of $56,348.00 in spousal support. He also provided her with health insurance and dental insurance for more than a year, until divorce

43. The Plaintiff is entitled to back alimony in a lump sum of $103,652.00 to help her pay back money she has had to borrow in order to subsist. The retroactive alimony is based upon $5000.00 per month back to the time of filing minus the actual cash paid by the Defendant to the Plaintiff during that time. This is the amount of post separation support the parties agreed to in a consent order filed in this case in October 2015.

44. Plaintiff presented evidence that the Defendant committed marital misconduct by participating in acts of adultery and/or illicit sexual behavior during the marriage and before the date of separation. The Defendant has admitted these acts and the Court so finds.

7

45. The Defendant did not present any evidence of marital misconduct on the part of the Plaintiff. In stead, he testified that she is a wonderful mother and homemaker and the court so finds.

46.    The Court considered this evidence and determined that the alleged marital misconduct, the age of the Plaintiff and her lack of a career directly affect the duration and the amount of the alimony award set forth herein.

47.    Since the Court has determined that the Plaintiff is entitled to the relief demanded pursuant to N.C.G.S. 50-16.3A, is the dependent spouse, and was and is without means to subsist during the prosecution of the suit and to defray the necessary expenses thereof except through depletion of her estate and borrowed money, she is entitled to an award of attorney fee pursuant to N.C.G.S. 50-16.4.

48.    Her attorney of record, Robin J. Stinson, has submitted to the Court an affidavit. Robin J. Stinson has been licensed as an attorney by the N.C. State Bar since 1984; she is a NC State Bar-certified family law specialist; and she is a fellow in the American Academy of Matrimonial Lawyers. Her normal hourly rate is $325.00 per hour and this hourly rate is normal, customary, and reasonable for an attorney possessing the hears of experience and expertise of Robin J. Stinson. In addition, as indicated in Plaintiff's Affidavit, she was assisted by other members of her firm including paralegals. The total number of hours expended by Plaintiff's counsel in the prosecution of Plaintiff's claim for alimony, including the hours expended by counsel's law partners and paralegals who assisted her in the alimony case, totaled over 206.15 hours up and through January 16, 2016, which is not unreasonable given the length of time this case has taken from the filing of the Complaint through trial. Subsequent to the date referenced in the Affidavit, counsel was in court for the trial of the alimony and equitable distribution matters for 6 days, including a substantial portion of those days in court dealing with issues relating to the equitable distribution claim.

49.    In Plaintiff's attorney's Affidavit, she is requesting an attorney's fee award of $48,384.43 for time spent on the alimony case only up and through January 16, 2016. Some of the charges appear to apply to both the Equitable Distribution case and the alimony case.

50.    In the discretion of the Court, Plaintiff should be awarded $40,000.00 in attorney fees for the prosecution of her alimony claim against Defendant. Said amount of attorney fees is a reasonable amount of fees to be paid by Defendant on Plaintiff's behalf.

## CONCLUSIONS OF LAW

1.    All parties are properly before the Court and the Court has jurisdiction of the parties and the subject matter of this action.

2.    The parties are divorced, and the Plaintiff's alimony claim was filed prior to their divorce.

3.  The Plaintiff is a dependent spouse in that she is actually substantially dependent upon the Defendant for her maintenance and support and is substantially in need of maintenance and support from Defendant.

4.  The Defendant is a supporting spouse upon whom the Plaintiff is actually substantially dependent for maintenance and support and from whom Plaintiff is substantially in need of maintenance and support.

5.  The Plaintiff is in need of and is entitled to an award of alimony from the Defendant.

6.  The Defendant participated in acts of illicit sex acts prior to the separation of the parties.

7.  Based upon the factors set forth in N.C.G.S. 50-16.3A and in the Court's discretion, the award of alimony as ordered herein is equitable under the circumstances of this case.

8.  The Defendant has the means and ability to pay alimony as set forth herein after due consideration to the economic factors set forth in NCGS 50-16.9A(B) until the death of either party or the Plaintiff's remarriage or cohabitation as forth in NCGS 50-16.9, whichever should first occur.

9.  The Plaintiff as the dependent spouse is entitled to an   award of attorney fees.

10. The plaintiff is entitled to an award of a portion of her attorney fees in that Plaintiff is entitled to the relief prayed for in her Complaint for alimony, she is a dependent spouse, and she was and is without sufficient means to subsist during the prosecution of her suit for alimony and to defray the necessary expenses.  The amount of attorney fees ordered here is reasonable under the circumstances.

11. Any finding of fact that would be an appropriate Conclusion of Law is incorporated herein by reference.

**IT IS, THEREFORE, ORDERED ADJUDGED, AND DECREED AS FOLLOWS:**

1.    Beginning on March 1, 2016, and on or before the first day of each month thereafter, the Defendant shall pay the sum of  $6000.00            each month to the Plaintiff as alimony, such alimony to terminate upon the earliest to occur of the following:  the death of either party, or the Plaintiff's remarriage or cohabitation as set forth in NCGS 50-16.9.

2.    The Defendant shall pay to the Plaintiff as retroactive alimony the sum of $103,652.00.00 to be paid in full on or before June 1, 2016.

3.    The Defendant shall pay to Plaintiff's attorney partial fees in the amount of $40,000.00 to be paid on or before May 1, 2016.

4.    The Court retains jurisdiction over this matter pursuant to NCGS 50-16.9 and other relevant statues.

This the 26th day of February, 2016

Judge Presiding
13 CVD 3750

10