**SO ORDERED.**

**SIGNED this 27 day of July, 2017.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

STANLEY BOYD GREEN

DEBTOR

CASE NO.
16-02105-5-SWH

CHAPTER 13

### MEMORANDUM OPINION REGARDING MOTION TO DISMISS

The matter before the court is the motion filed by Jennifer Cleland to dismiss this case pursuant to 11 U.S.C. § 109(e).[1]  A hearing took place in Raleigh, North Carolina, on February 21, 2017.  At issue is whether the debts owed by the debtor, Stanley Boyd Green, exceed the statutory limits set forth in § 109(e), rendering Mr. Green ineligible to be a debtor under chapter 13 of the Bankruptcy Code.

### BACKGROUND

Mr. Green filed a petition for relief under chapter 13 of the Bankruptcy Code on April 20, 2016.  Mr. Green is an attorney with the firm of Strauch, Green and Mistretta, P.C. (the "Law

---

[1] Ms. Cleland's amended motion to dismiss included bad faith as a basis for dismissal pursuant to 11 U.S.C. § 1307(c).  Because the court finds that Mr. Green is not eligible for chapter 13 relief, it need not address the § 1307 issue.

Firm"). Ms. Cleland is Mr. Green's former spouse. Mr. Green and Ms. Cleland were married on October 22, 1994, and divorced on September 8, 2014. Mr. Green and Ms. Cleland's divorce proceedings were ongoing as of the petition date, with several orders impacting the issues before the court. First, on February 22, 2016, the Forsyth County District Court entered an Equitable Distribution Judgment and Order (the "ED Order"), which provided for Mr. Green to deed the marital home to Ms. Cleland, and further provided for certain payments to be made by Mr. Green to Ms. Cleland. Mr. Green made a payment of $116,000 under the ED Order on March 22, 2016, leaving $356,364.07 due to Ms. Cleland as of the petition date.

On March 2, 2016, the Forsyth County District Court entered an Alimony Judgment and Order (the "Alimony Order"), requiring Mr. Green to pay the sum of $6,000 per month to Ms. Cleland. Mr. Green was current on all alimony payments when he filed his bankruptcy petition. Under the various state court orders, the alimony payments were to be used by Ms. Cleland to make continuing payments on a mortgage loan to Wells Fargo Bank, N.A. on which Mr. Green is a co-borrower. On March 23, 2016, Mr. Green filed a pro se notice of appeal from the ED and Alimony Orders, claiming that the Orders were inaccurate in the amounts due to Ms. Cleland.

Ms. Cleland's equitable distribution award would be treated as an unsecured claim in a chapter 13 case, with any unpaid balance discharged pursuant to 11 U.S.C. § 1328.[2] Mr. Green's chapter 13 plan proposes to pay a dividend of approximately 10 percent to unsecured creditors. Dkt. 10. Mr. Green's Statement of Financial Affairs lists income of $396,446 in 2014 and $2,407,546 in 2015. His original schedules list secured claims in the amount of $479,708.02 and

---

[2] The ED award would not be dischargeable under any other chapter of the Bankruptcy Code.

general unsecured claims in the amount of $389,834.16. Dkt. 9 at 1. The uncontested listed claims included American Express ($11,018.36) and Barclay Card ($22,739.23). Dkt. 9 at 22. Ms. Cleland's claim was listed as an "unliquidated" claim in the amount of $356,076.57. Dkt. 9 at 22. Wells Fargo was originally scheduled as a secured creditor with a claim in the amount of $479,708.02. Dkt. 9 at 19.

On September 15, 2016, Ms. Cleland filed her Motion to Dismiss, contending that Mr. Green is ineligible for chapter 13 relief because his noncontingent, liquidated debts exceed the $394,725 limit set forth in 11 U.S.C. § 109(e). Dkt. 40. Ms. Cleland maintained that her claim should properly be listed as "disputed," not "unliquidated," and thus should be considered in its full amount in calculating whether Mr. Green's debts exceed the statutory limit.

Thereafter, Mr. Green amended his Schedule D on October 5, 2016 to reduce the amount owed to Ms. Cleland to $356,364.07 (still denoted "unliquidated"), and reclassifying Wells Fargo as an unsecured creditor for "potential liability" on the loan secured by the former marital residence in an unknown amount. Dkt. 71 at 21, 22. Mr. Green also added First Bank as a contingent, unliquidated claim in an unknown amount for "potential personal guarantee" on Law Firm debt that is not in default. The total amount of unsecured debt remained at $389,834.16 in the amended schedules. Dkt. 71 at 23.

Ms. Cleland amended her motion to dismiss on January 25, 2017, Dkt. 110, contending that Mr. Green omitted several obligations on his schedules and amended schedules and that the proper calculation of his debts still results in unsecured debts in excess of the debt limits. Specifically, Ms. Cleland noted that because Mr. Green deeded the former marital residence to her, the Wells Fargo debt is now unsecured as to Mr. Green, but he is still obligated on the loan

3

such that the full balance of that debt should be included in the calculation of the unsecured debt limits. Ms. Cleland also contended that the Law Firm's obligation to First Bank was in default (as evidenced by the filing of an unsecured claim by First Bank, Claim No. 10-1, in the amount of $300,408.33), such that its claim should have been included. Finally, Ms. Cleland maintained that an unsecured obligation to James Stemper should have been listed. Mr. Stemper filed a proof of claim in an "unknown" amount, Claim No. 4-1, that apparently arose from renovation expenditures advanced by Mr. Stemper on a condominium jointly used by Mr. Stemper and Mr. Green. Mr. Stemper's claim indicates that he has an oral agreement with Mr. Green that in exchange for the $42,000 he spent on renovations, Mr. Green would maintain a 2015 Scout Dorado boat for Mr. Stemper's use, which obligation Ms. Cleland contends would conservatively be valued at $19,620.

Further, according to a Complaint filed by the chapter 13 trustee against Vermont Student Assistance Corporation ("VSAC"), Mr. Green paid the balance owed to VSAC approximately one month prior to filing his bankruptcy petition. *See Logan v. Vermont Student Assistance Corp.*, Adv. Pro. No. 16-00179-5-SWH. The complaint sought to avoid that payment as a preferential transfer pursuant to 11 U.S.C. § 547. The trustee obtained a default judgment against VSAC on April 13, 2017, after which VSAC filed an unsecured proof of claim in the amount of $20,804.61, the amount of the avoided payment. Claim 11-1. Ms. Cleland contends that the unsecured debt created by the prepetition preferential payment should also be counted toward the debt limit.

Mr. Green denies that he owed any debt to VSAC as of the petition date, and asserts that his debts are listed correctly as shown in his Amended Schedules. Mr. Green further contends that Ms. Cleland's claim under the ED Order in the amount of $356,364.07 and the Wells Fargo

4

mortgage loan claim should be characterized as "contingent" or "unliquidated," such that they do not count toward the debt limits of § 109(e).  Finally, Mr. Green contends that in reviewing the § 109(e) debt limits, the court should consider only the debtor's schedules, not the claims filed in the case.[3]

As noted, Mr. Green has appealed the ED Order in the state court, contending that the trial court's award of the marital residence to Ms. Cleland without a corresponding assignment of the Wells Fargo debt was erroneous and that the distributive award double counts expected income from the Law Firm relating to work performed during the marriage.  Mr. Green has similarly objected to Ms. Cleland's claim filed in the bankruptcy case, contending that the proper amount of the claim is $38,076.57. Dkt. 113.  Based on the state court appeal, Mr. Green maintains that the debt owed to Ms. Cleland is not a liquidated or noncontingent debt that should count for chapter 13 eligibility under §109(e).

In addition, prior to the petition date, Mr. Green jointly owned property at 2733 Spring Garden Road, Winston-Salem, North Carolina (the "Winston Property") with Ms. Cleland.  He is jointly liable to Wells Fargo on the mortgage on the Winston Property.  His original schedules listed the Winston Property as property of the estate and listed Wells Fargo as a secured creditor. Dkt. 9 at 4, 18-19.  However, per the ED Order, Mr. Green deeded the Winston Property to Ms. Cleland on March 16, 2016, rendering the debt to Wells Fargo unsecured as to Mr. Green.[4]  The amended schedules no longer list the Winston Property as an asset and list Wells Fargo as an

---

[3] Barclay Cards did not file a proof of claim in the case, and the claims deadline has passed. Accordingly, Mr. Green contends that if the court looks at the claims filed by other creditors in calculating the debt limits (such as VSAC), it should not count the Barclay debt.

[4] Wells Fargo filed a secured proof of claim, Claim No. 3-1.

unsecured creditor with a contingent, unliquidated claim in an unknown amount. Dkt. 71 at 22. Ms. Cleland contends that because Mr. Green is a primary obligor and no longer owns the collateral, the Wells Fargo debt is an unsecured obligation in the full amount of the balance of the loan.  While Mr. Green concedes he is an obligor on the debt, he maintains (1) that the debt is still a secured debt for purposes of § 109(e), and (2) that his liability to Wells Fargo is now contingent upon the default of Ms. Cleland, such that the mortgage balance of $344,587 also should not be included in the eligibility calculation.

In summary, as of the petition date, Mr. Green contends that his noncontingent, liquidated, unsecured debts included only the claims of American Express ($11,018.36) and Barclay Card ($22,739.23), for a total of $33,757.59.  He contends that Ms. Cleland's claim is unliquidated except in the amount of $38,076.57; that the Wells Fargo debt is secured, contingent, and unliquidated; that the First Bank debt is both unliquidated and contingent; and that the VSAC debt was not owed on the petition date.  If the court finds that almost any combination of the debts excluded by Mr. Green constitute noncontingent, liquidated, unsecured debts, then Mr. Green's obligations exceed the debt limits, rendering him ineligible for chapter 13 relief  under § 109(e).

## DISCUSSION

### I.    SECTION 109(e) ELIGIBILITY

Section 109(e) provides, in relevant part, that

[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than [$394,725][4] . . . may be a debtor under chapter 13 of this title.

---

[4] Pursuant to 11 U.S.C. § 104(b), the § 109(e) debt limits are adjusted every three years to reflect changes in the cost of living.  As of April 1, 2016, the limit for unsecured debt is $394,725 and the limit for secured debt is $1,184,200.

11 U.S.C. § 109(e).  Chapter 13 eligibility is determined as of the date the petition is filed.  *Id.*; *see, e.g., In re Bernick*, 440 B.R. 449 (Bankr. E.D. Va. 2010).  A majority of courts have held that a bankruptcy court should not look beyond a debtor's initial schedules in determining eligibility for chapter 13 relief, *In re De La Hoz*, 451 B.R. 192, 201 (Bankr. M.D. Fla. 2011), but may consider amended schedules where the amendments correct errors in the original schedules.  *In re Mitchell,* No. 12-70856, slip op. at 20 (Bankr. W.D. Va. Jan. 30, 2013) (distinguishing "between an amendment to set forth the true facts of a case and one which seeks to alter a representation intentionally made in the original schedules for a tactical litigation purpose, such as asserting that a debt originally represented as due and owing in an amount set forth in the original schedule is now claimed to be disputed, unliquidated and contingent.").

The question of whether a debt is "contingent" or "liquidated" is a question of law.  *In re Goralnick*, 81 B.R. 570, 571 (9th Cir. BAP 1987).  However, the "contingent" or "liquidated" *amount* of a debt is a question of fact. *See* Fed. R. Bankr. P. 8013.  Bankruptcy courts are not bound by the debtor's scheduling claims as either contingent or unliquidated in determining whether the debtor qualifies for chapter 13 relief. *De La Hoz*, 451 B.R. at 202.

### A.    <u>Noncontingent</u>

"[A] debt is noncontingent if all of the events necessary to give rise to liability for it take place prior to the filing of the petition."  *In re Sappah*, No. 11-03129-8-SWH, 2012 WL 6139644 (Bankr. E.D.N.C. Dec. 11, 2012) (quoting *In re Knowles*, Case No. 05-06402-8-ATS (Bankr. E.D.N.C. Oct. 31, 2005)).  For example, debts arising from allegedly tortious conduct where the debtor is disputing liability are not automatically deemed contingent, "but rather, the court must

determine whether all of the events that give rise to debtor's alleged liability occurred prior to the bankruptcy filing." *In re Guzman*, Case No. 10-10169-8-JRL, 2011 WL 5909522, at *2 (Bankr. E.D.N.C. May 31, 2011).

"Only if liability relies on some future extrinsic event which may never occur will the debt be held to be contingent." *In re Hanson*, 275 B.R. 593, 596 (Bankr. D. Colo. 2002) (quoting *In re Nesbit*, No. 99–28414JKF, 2000 WL 294834 at *2 (Bankr. W.D. Pa. March 16, 2000)).  The fact that a debtor disputes a debt or has potential defenses or counterclaims that might reduce a creditor's actual collection does not render a debt contingent. *Id.* (citations omitted).

### B.    <u>Liquidated</u>

A debt is "liquidated" if it is "certain as to amount." *In re Lewis*, 157 B.R. 253, 255 (Bankr. E.D. Va. 1993) (citing *In re Claypool*, 142 B.R. 753, 754 (Bankr. E.D. Va. 1990)).  Further, a liquidated debt is one that "is readily and precisely determinable, where the claim is determinable by reference to an agreement or by simple computation." *United States v. May*, 211 B.R. 991, 996 (Bankr. M.D. Fla. 1997).  Courts consider whether a significant evidentiary hearing would be necessary to determine the amount of the debt. *Guzman*, 2011 WL 5909522 at *3.  *See also In re Huelbig*, 299 B.R. 721 (Bankr. W.D. Va. 2002) (noting that "n[o]where in the Bankruptcy Code does it require that a debt be based on a final order to be determined liquidated.")

From a policy perspective, courts have held that finding every disputed claim to be "not liquidated" would "allow a debtor, simply by characterizing certain claims as disputed, to ensure his eligibility to proceed under Chapter 13 in circumstances that Congress plainly intended to exclude from that chapter." *In re Mazzeo*, 131 F.3d 295, 305 (2d Cir. 1997); *In re Claypool*, 142 B.R. 753, 755 (Bankr. E.D. Va. 1990) ("[a] liquidated, noncontingent claim whose validity is in

dispute must nevertheless be included in determining eligibility . . . . To hold otherwise would allow debtors to bootstrap themselves to chapter 13 eligibility simply by disputing liability on the requisite amount of their claims.").

On the other hand, claims that are subject to bona fide dispute have at times been held to be unliquidated. *In re Lambert*, 43 B.R. 913 (Bankr. D. Utah 1984) ("a debt cannot be certain to the extent there is a bona fide dispute as to its amount or the underlying liability of the debtor to pay the debt."). The Fourth Circuit considered whether an unstayed state court judgment on appeal constitutes a "bona fide dispute" for purposes of § 303 in *Platinum Fin. Servs. v. Byrd (In re Byrd)*, 357 F.3d 433 (4th Cir. 2004). As noted by the *Byrd* court, the Bankruptcy Code does not define the term "bona fide dispute," but other courts have held that "a bona fide dispute requires 'an objective basis for either a factual or a legal dispute as to the validity of [the] debt.'" *Id.* at 437 (citations omitted). A state court judgment "go[es] a long way toward establishing the absence of a bona fide dispute," but does not guarantee the lack of a bona fide dispute absent rulings by the state appellate court. *Id.* at 438. As a result, a pending appeal presenting substantial factual or legal questions may support an argument of bona fide dispute, *id.*, at least for purposes of § 303. The Fourth Circuit concluded that the fact that an appeal is pending is not determinative of the question either way, but that the bankruptcy court must decide whether there is an objective basis for either a factual or legal dispute as to the validity of the debt.[5]

The Fourth Circuit's analysis in conjunction with § 303 is similar to that adopted by the Ninth Circuit Bankruptcy Appellate Panel in a § 109(e) determination in *In re Nicholes*, 184 B.R.

---

[5] The court distinguished the appealed judgment from an unappealed or unappealable judgment, where the debtor can no longer contest liability. *Id.* at n.1.

82, 90 (9th Cir. BAP 1995), where the court held that a "dispute *may* render a debt unliquidated if it prevents the ready determination of the amount of a claim." (Emphasis added.)

## II.    ANALYSIS OF DEBTS

### A.    <u>Cleland Debt – Obligations under ED Order on Appeal</u>

As summarized above, this court may determine Ms. Cleland's debt to be unliquidated, notwithstanding the ED Order, if it determines that the appeal demonstrates an objective basis for a factual or legal dispute as to the validity of the debt.  Mr. Green's bases for appeal call into question whether the district court counted anticipated income from the Law Firm twice, and whether the district court properly required Mr. Green to deed the residence to Ms. Cleland without a corresponding release from the mortgage debt. Mr. Green's objection to Ms. Cleland's claim indicates the correct amount of the claim is $38,076.57.

The court finds that there is an objective basis for dispute over whether the amounts in the ED Order were properly determined by the state trial court that must be resolved by the North Carolina appellate courts.  Because of the nature of the dispute, the correct amount is not readily determined without the need for an extensive evidentiary hearing by this court and, arguably, the need for this court to sit in review of the state court (which it cannot do).  Accordingly, the court finds that the amount of the debt to Ms. Cleland is the subject of bona fide dispute such that it is an unliquidated debt except as to the amount agreed to by Mr. Green, $38,076.57.

Thus, the amount of $38,076.57 will be included in the calculation of unsecured debt for purposes of § 109(e), and the balance will not be included.

10

### B.    Wells Fargo Debt – Mortgage on Former Marital Home

Mr. Green originally scheduled an interest in the Winston property as a tenant in common, Dkt. 9 at 4, and listed Wells Fargo as holding a secured claim with a deed of trust on the Winston Property with a balance due in the amount of $355,000. Dkt. 9 at 18-19.  Mr. Green's amended schedules omit any reference to the Winston Property in Schedule A, and list Wells Fargo as an unsecured creditor with a contingent and unliquidated claim in an unknown amount for "potential liability on loan secured by property owned 100% by former spouse," Dkt. 71 at 22; however, he now contends that Wells Fargo remains a *secured* creditor notwithstanding that his interest has been deeded to Ms. Cleland in compliance with the ED Order.  Ms. Cleland contends that because Mr. Green is no longer an owner of the Winston Property, but remains liable on the mortgage to Wells Fargo, the debt should be considered an unsecured debt as to Mr. Green in the full amount of the outstanding balance on the loan.

### 1.    Secured or Unsecured

In support of his position that the debt is secured, Mr. Green cites to *In re Belknap*, 174 B.R. 182, 183 (Bankr. W.D.N.Y. 1994), which held that a secured *claim* under § 506(a) is not the same as a secured *debt* under § 109(e).  A "secured debt is simply a debt which is secured by property.  The court finds no basis to infer a requirement that that property belong to the debtor."

Other courts have declined to follow *Belknap*, finding instead that *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 557-58 (1990), mandates a different result. *See, e.g., In re Brown*, 250 B.R. 382, 384 (Bankr. Idaho 2000); *In re Fuson*, 404 B.R. 872, 876 (Bankr. S.D. Ohio 2008); *In re Lower*, 311 B.R. 888, 894 (Bankr. Colo. 2004); *In re Mitchell*, No. 12-70856 (Bankr. W.D. Va. Jan. 30, 2013) and cases cited therein.  "The Supreme Court has instructed that

11

the terms 'claim' and 'debt,' as used throughout the Code, should be coextensive." *Brown*, 250 B.R. at 384.

> A particular meaning is ascribed to the term "secured claim" for bankruptcy purposes in Section 506(a) which provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ...." 11 U.S.C. § 506(a). In other words, the term secured claim, and thus secured debt, was intended by Congress to refer to a claim of a creditor secured by a lien on property in which the debtor's bankruptcy estate owns an interest, and is limited in amount to the extent of the value of the creditor's interest in the bankruptcy estate's interest.

*Id.* Judge Britt's decision in *Branch Banking & Trust Co. v. Russell*, 188 B.R. 542, 544 (E.D.N.C. 1995), agreeing that "the term 'secured debt' should be defined with reference to 'the extent of the value of such creditor's interest in the estate's interest in the property securing the lien," is consistent with the *Brown* construction, although the *Russell* court went on to find that the bankruptcy estate had an interest in corporate-owned collateral where the debtors were the sole owners of the corporation and concluded that the estate had an "interest" as contemplated by § 506(a).

This court agrees "secured debt" for purposes of § 109(e) is to be defined with reference to § 506(a), and that whether or not a debt is secured is dependent upon the estate's interest in the collateral. Mr. Green executed a quitclaim deed to Ms. Cleland on March 16, 2016. His amended schedules list no interest in the Winston Property. It does not appear that the bankruptcy estate retains any interest in the Winston Property, and in accordance with § 506(a), Wells Fargo is unsecured as to Mr. Green.[6]

---

[6] Mr. Green suggests that because the ED Order directing him to deed the Winston Property to Ms. Cleland is on appeal, he retains some equitable interest in the Winston Property. While the state appellate

### 2.    Contingent

Mr. Green has also listed the debt to Wells Fargo as contingent and unliquidated.  Mr. Green is a co-obligor on the debt with Ms. Cleland.  As noted above, "a debt is noncontingent if all of the events necessary to give rise to liability for it take place prior to the filing of the petition." *Sappah*, 2012 WL 6139644, at 1.

> "Contract claims against the debtor other than guaranties are generally held to be noncontingent debts for Chapter 13 eligibility purposes. . . . Debts based on promissory notes . . . typically are not contingent because the debtor's liability is fixed by contract from the inception and is not dependent on any future event other than the passage of time."

*Mitchell*, slip op. at 17 (quoting Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy, 4th Edition*, § 15.4, at ¶ 1, Sec. Rev. June 11, 2004, www.Ch13online.com).

The proof of claim filed by Wells Fargo shows that Mr. Green and Ms. Cleland are co-borrowers on the note.  Thus, Mr. Green and Ms. Cleland each have primary liability on the Wells Fargo debt, and Wells Fargo has the right to collect against each of them, without first pursuing its collateral, even if it is not likely to do so.  There is no future event required for Mr. Green to be liable on the debt, and it is not contingent for § 109(e) purposes.

### 3.    Liquidated

In addition, Mr. Green has listed the Wells Fargo debt as unliquidated in his amended schedules.  The original schedules indicated the amount of the debt was $355,000, and Wells Fargo filed a claim in the amount of $344,587.  Scheduling a debt with an amount owed "does not look

---

court may realign the indebtedness (which has been accounted for by this court in finding the debt to Ms. Cleland to be unliquidated), the ownership of the Winston Property is unlikely to change.

like a debt which the Debtor truly regarded as 'unliquidated,'" and the proof of claim includes an amount "less suggestive of an 'unliquidated' obligation." *Mitchell*, slip op. at 18.

This court previously considered whether a debt was liquidated where a creditor had collateral it could look to for collection of the debt, and held that because the debtors were liable for the full debt as it existed on the petition date, the potential liquidation of collateral of another is not relevant to the § 109(e) analysis. *Sappah*, 2012 WL 6139644, at *4.   Until a creditor liquidates its collateral, it may pursue the debtors for the full amount due, and the amount due as of the petition date is the only amount relevant to the § 109(e) determination. *Id.* at *5.

Because the amount of the debt is easily determined and is not dependent upon the future liquidation of the collateral securing the loan, the court finds that the debt is liquidated.  The court will give the debtor the benefit of using the amount of the debt on the proof of claim, $344,587, in the § 109(e) calculation, both because the scheduled amount appears to be an approximation and because the claim amount is lower.

### C.      First Bank Debt – Personal Guaranty of Law Firm Obligation

Mr. Green's amended schedules list a claim to First Bank as contingent and disputed in an unknown amount for a "possible" personal guarantee of a line of credit loan owed by the Law Firm. Dkt. 71 at 22.  The schedules indicate that the Law Firm is not in default on the debt.  First Bank filed a claim in the amount of $300,408.33, Claim No. 10-1, which does not indicate the status of the loan as in default, or not.  Ms. Cleland contends that the loan is in default as a result of Mr. Green's bankruptcy, and thus the full amount of the debt is not contingent and should count toward the debt limits.

### 1.    Contingent on Default

It is generally recognized that a "guaranty agreement is a separate debt instrument from the note and deed of trust, creating a separate obligation of the  . . . debtor, and [a creditor] is not required to liquidate any collateral or pursue the note borrower before seeking payment in full from the  . . . debtor." *Sappah,* 2012 WL 6139644, at *3. *See also In re Smith*, Case No. 11-01951-8-JRL, 2011 WL 5909430, at *2 (Bankr. Oct 25, 2011) ("In North Carolina, a personal guarantor is absolutely liable for the underlying debt, without regard for the obligation of other guarantors or obligors to pay the same or related debt") (citing *O'Grady v. First Union Nat'l Bank*, 296 N.C. 212, 220 (1978); *EAC Credit Corp. v. Wilson*, 281 N.C. 140, 145 (1972)).  In the cited cases, however, the primary obligor was in default, and the cases simply acknowledged that a creditor is not obligated to pursue the primary obligor prior to seeking payment from a guarantor; once the debt is in default, the contingency giving rise to absolute liability for the guarantor has occurred.

Less frequently discussed, however, is whether a guaranty is a contingent liability if the underlying obligation is not in default.  Mr. Green cites *Glaubitz v Grossman*, No. 10-C-927, 2011 WL 147931 (E.D. Wis. Jan. 18, 2011), for the proposition that the debt is contingent if it is not in default:

> The bankruptcy court erred because a guaranty is, by its very nature, a contingent liability. "The classic example of a contingent debt is a guaranty because the guarantor has no liability unless and until the principal defaults." *In re Pennypacker,* 115 B.R. 504, 507 (Bankr. E.D. Pa.1990); *see also In re Martz,* 293 B.R. 409, 411 (Bankr. N.D. Ohio 2002) (a guaranty is the "quintessential" type of contingent debt). Here, it is undisputed that the required contingency—default by the primary obligor—did not occur. Even though the guaranties contain language suggesting that the guarantor's liability is "absolute," "unconditional," or even "joint and several," this does not alter the secondary nature of guarantor liability. "A guaranty, in its technical sense, is collateral to and made independently of, the principal contract which it guarantees, and the guarantor's liability is secondary

15

rather than primary." *Cont'l Bank & Trust Co. v. Akwa,* 206 N.W.2d 174, 181 (Wis. 1973).  The absolute or unconditional nature of a guaranty only becomes relevant once the primary obligor is in default. *See, e.g., Lawndale Steel Co. v. Appel,* 423 N.E.2d 957, 960 (Ill. App. Ct. 1981) ("An absolute guaranty is an unconditional undertaking on the part of the guarantor that the person primarily obligated will pay or otherwise perform. *Such guarantor is liable immediately upon default of the principal,* without notice") (emphasis added); *In re Albano,* 55 B.R. [363] at 367 [(N.D. Ill. 1985)] ("by definition the parties know in advance the guarantor will become liable *only if the contingency of default comes to pass* ") (emphasis added).

2011 WL 147931, at *1.

A bankruptcy court in Illinois found that the state law in Illinois is clear that a guaranty is secondary liability only, such that a default is required and, absent default, the debt is contingent:

> The fundamental principle that a guarantor's promise of payment is secondary, meaning that his liability does not ripen until the debt has come due and the primary obligor is in default, is not a contractual condition that may be altered or dispensed with at the whim of the parties.  The principle of secondary liability is, instead, an unseverable aspect of the nature of a guaranty, that distinguishes a guaranty from a suretyship.  As a noncontractual condition, it is not subject to contractual modification or waiver.
>
> Thus, the terms "absolute," "unconditional" and similar verbiage used in a guaranty agreement serve to exclude contractual conditions and clarify that the undertaking is a guaranty of payment, not merely collection.  But those terms cannot render the guarantor a primary obligor, as if he were an accommodation maker or a surety.  In this Court's view, there are no words that could be used in a guaranty to impose primary liability upon the guarantor.  If there were, the instrument would not be a guaranty under Illinois law.

*In re Clore*, 547 B.R. 915, 922 (Bankr. C.D. Ill. 2016).

A review of North Carolina law shows that the rule is the same: a guaranty of payment is an absolute obligation to pay a debt *if it is not paid by the principal obligor.*  In *O'Grady v. First Union Nat'l Bank*, 296 N.C. 212, 220 (1978), the court held

> A guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself liable in the first instance for such payment or performance. *Cowan v. Roberts*, 134 N.C. 415,

16

46 S.E. 979 (1904).  A guaranty of payment, as opposed to a guaranty of collection, is an absolute promise to pay the debt of another at maturity if not paid by the principal debtor.  *Investment Properties v. Norburn*, 281 N.C. 191, 188 S.E.2d 342 (1972).  The right to sue upon an absolute guaranty of payment arises immediately upon the failure of the principal debtor to pay at maturity. *Milling Co. v. Wallace*, 242 N.C. 686, 89 S.E.2d 413 (1955).

296 N.C. at 220; *see also EAC Credit Corp. v. Wilson*, 281 N.C. 140, 145 (1972) ("A Guaranty of payment is an absolute promise by the guarantor to pay the debt at maturity if it is not paid by the principal debtor.  The obligation of the guarantor is separate and independent of the obligation of the principal debtor, and the creditor's cause of action against the guarantor ripens immediately upon failure of the principal debtor to pay the debt at maturity.") (citation omitted).

Accordingly, the debt to the Law Firm is contingent so long as the obligation is not in default.  Mr. Green maintains that the obligation is not in default and that First Bank has not declared it to be in default, but Ms. Cleland contends that it is.

### 2.    Existence of Default

Mr. Green testified that the payments to First Bank were current on the petition date. Accordingly, the question is whether, as Ms. Cleland contends, there is a nonpayment default that could trigger guarantor liability.  Specifically, Ms. Cleland maintains that as a guarantor, Mr. Green was subject to a "Default as to Third Parties" provision such that his default on payments to her under the ED Order created a default on the First Bank loan, whether or not First Bank was aware of the default or declared the loan in default.

Mr. Green, on the other hand, construes the Third Party Default provision more narrowly. The relevant provisions read:

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any

17

other agreement in favor of any other creditor or person that materially affects any
of Borrower's property or Borrower's ability to repay their Note or perform
Borrower's obligations under this Note or any other related documents.
                    * * *
Events Affecting Guarantors. Any of the preceding events occur with respect to
any Guarantor, of any of the indebtedness.

Claim 10-1, Attachment 2 at 1.

Mr. Green contends that (1) the provisions refer only to "agreements," and the ED Order

is not an agreement that could create a default; (2) the ED Order has been appealed; (3) the Law

Firm's ability to pay the debt is not impacted by any default under the ED Order, and (4) First

Bank has made no claim upon the Law Firm for payment.

The court agrees, particularly in light of the appeal that is at least colorable as described

above, that the status of the payments under the ED Order do not constitute a default on the First

Bank debt for purposes of converting the debt from contingent to noncontingent.[7]  Accordingly,

the court finds that the First Bank debt is contingent and is not to be included in the calculation

of unsecured debts for purposes of chapter 13 eligibility.

### D.    **Stemper Obligation**

Mr. Green and James Stemper had an agreement regarding a condominium and boat on the

North Carolina coast. Mr. Stemper owns a condominium that Mr. Green is authorized to use.  The

condominium required some repairs, which Mr. Stemper agreed to fund in exchange for access to

a boat Mr. Green intended to purchase. Mr. Stemper paid for the repairs to the condominium, and

Mr. Green purchased the boat.  Ms. Cleland contends that the debtor's obligation to allow

---

[7] Nothing in this order is determinative of First Bank's rights to declare a default, or not, on the
same basis.

18

Mr. Stemper to use the boat comes at a cost that should be included in Mr. Green's unsecured debts.

Mr. Green did not identify Mr. Stemper in his original schedules as having any claim or agreement, but he listed the agreement with Mr. Stemper as an executory contract with no money owed in his amended schedules. Dkt 71 at 24. Mr. Stemper filed a claim, Claim No. 4-1, in an "unknown" amount, the basis of which is an "oral contract creating license for joint use."

In her memorandum in support of her motion to dismiss, Ms. Cleland contends that the value of Mr. Stemper's claim can be liquidated, given that Mr. Stemper spent over $42,000 remodeling the condominium. The court disagrees. The value of the "use of the boat" sufficient to reimburse Mr. Stemper for some of the repair expenditures, if that is even the agreement of the parties, is not an easily calculable amount. Accordingly, the court finds that the obligation to Mr. Stemper, to the extent it is a debt at all, is unliquidated for purposes of chapter 13 eligibility.

### E.    VSAC Debt – Debt Satisfied During Preference Period

As noted above, the chapter 13 trustee has avoided a payment by Mr. Green to VSAC for the balance owed to it approximately one month prior to filing his bankruptcy petition. VSAC subsequently filed a claim in the amount of $20,804.61, the amount of the avoided payment. Claim 11-1. Ms. Cleland contends that the unsecured debt created by the prepetition preferential payment should also be counted toward the debt limit. Mr. Green counters that there was no debt owed to VSAC on the petition date, and therefore it does not count toward the § 109(e) calculation.

The question of whether avoidable prepetition preferences should be considered in conjunction with § 109(e) was discussed at length in *In re Hanson*, 275 B.R. 593, 597-98 (Bankr. D. Colo. 2002). There, the creditor obtained judgment liens during the preference period, and the

19

court determined that the related claims must be treated as unsecured for purposes of chapter 13 eligibility. Citing *In re Toronto*, 165 B.R. 746 (Bankr. D. Conn. 1994), the court concluded that the debt limitations "must be construed to include claims deemed unsecured by operation of the Bankruptcy Code" 275 B.R. at 597. "[S]ubsequent avoidance of a [preferential] payment relates back to the time before bankruptcy so the claim is deemed to have been unpaid at the time the petition was filed." *Id.* (quoting *Toronto*, 165 B.R. at 753) (internal quotations and citations omitted). Again citing to *Toronto* and *In re Scovis*, 249 F.3d 975 (9th Cir. 2001), with approval, the court determined that the claim was to be treated as unsecured, whether or not the debtors (or trustee) had obtained a judgment avoiding the lien. 275 B.R. at 598. The articulated principle is this: "If a debtor was ineligible for chapter 13 relief at the start of the preference period, eligibility cannot be created by a preferential transfer . . . which is treated by the Code as though it had never occurred." 275 B.R. at 597 (quoting *Toronto*, 165 B.R. at 754).

As noted by *Hanson*, "[t]he *Toronto* court analogized its decision to the line of cases holding that the unsecured portion of undersecured claims should be included in the calculation of the unsecured debt limitation under Section 109(e)." 275 B.R. at 597-98. Courts within the Fourth Circuit have similarly held that junior liens that are avoidable due to a lack of value to support the security interest should also be treated as unsecured for eligibility purposes. *See In re Bernick,* 440 B.R. 449 (E.D. Va. 2010).

This court agrees with the principles summarized in *Hanson*. The VSAC debt was paid during the preference period, and is unsecured by operation of the Bankruptcy Code. The avoidance of the payment returns the status of the debt to outstanding at the beginning of the preference period, and is thus treated as an unsecured debt as of the petition date. Otherwise, a

debtor could manipulate eligibility by making any number of preferential payments, thereby circumventing both the eligibility requirements *and* the policy preventing the payment of some creditors at the expense of others that is embodied in the strong-arm provisions.

Mr. Green maintains that if the court includes the VSAC debt in the calculation of debt limits (thereby looking outside the debtor's schedules), it should exclude the Barclay debt because Barclay did not file a proof of claim and its debt will not be paid through a chapter 13 plan. However, it is not the fact that VSAC filed a proof of claim that renders its debt one that must be counted, but the operation of the Code that treats the avoided payment as an unsecured prepetition debt. The result would be the same had VSAC chosen not to file a claim, although the filing of the claim does serve to inform the court as to the amount of the debt. "The critical test under the statute is how much unsecured debt the Chapter 13 debtor owes on the filing date. Whether an unsecured creditor bothers to file a claim in the case or even withdraws a claim which has previously been allowed is not relevant to that determination." *Mitchell*, slip op. at 20.

Accordingly, the VSAC debt in the amount of $20,804.61 is an unsecured, noncontingent, liquidated debt owed as of the petition date for purposes of §109(e).

## CONCLUSION

Based on the foregoing, the court finds that the following debts are Mr. Green's noncontingent, liquidated unsecured debts as of the petition date: Cleland, $38,076.57; Amex and Barclay, $33,757.59; VSAC, $20,804.61; and Wells Fargo, $344,587, the sum of which is $437,225.77. The court finds that the First Bank debt is contingent, and the Stemper debt is unliquidated. Because Mr. Green's noncontingent, liquidated, unsecured debts exceed $394,725 as of the petition date, he is ineligible for relief under chapter 13 pursuant to § 109(e) and the case

21

must be **DISMISSED**.  The debtor may convert his case to chapter 11 within 10 days of the date

of this order.   If no notice of conversion is filed, the case will be dismissed without further hearing.


**END OF DOCUMENT**